UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WEST TOWN MARKET, INC.
and HAYTHAM BESHI,

               Plaintiffs,

                               Case No. 18-CV-12320

vs.

                               HON. GEORGE CARAM STEEH

UNITED STATES OF AMERICA,
et al.,

               Defendants.
_____/

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT [ECF No. 19], GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT [ECF No. 20], AND GRANTING IN PART PLAINTIFFS'
<u>MOTION FOR LEAVE TO AMEND WITNESS LIST [ECF No. 25]</u>

      Haytham Beshi is the owner of the West Town Market convenience

store (Beshi and West Town Market will be referred to collectively as

"plaintiff").  West Town Market was permanently disqualified from

participating in the federal Supplemental Nutrition Assistance Program

("SNAP") due to a finding by the United States Department of Agriculture

Food and Nutrition Services that plaintiff trafficked in SNAP benefits.[1]

Plaintiff filed a complaint in this court seeking to reverse the disqualification.

The matter is before the court on cross motions for summary judgment.

PROCEDURAL BACKGROUND

On July 28, 2017, the United States Department of Agriculture

("USDA") issued a "charge letter" that permanently disqualified West Town

Market from accepting SNAP Benefits.  The USDA alleged that plaintiff

trafficked SNAP benefits in two ways: (1) by conducting numerous

transactions within a short time frame within the same household; and (2)

by conducting transactions too excessive in value to be actual purchases in

West Town Market.  Plaintiff responded to the charge letter by providing a

legitimate explanation for the types of purchases made by its customers

and attaching receipts for its food purchases to demonstrate that it had the

inventory to support the SNAP purchases made in its store.  On October 5,

2017, the USDA denied plaintiff's request to reverse the USDA action.

Plaintiff appeals the denial to this court.

---

[1]     The term "trafficking" comprises a number of fraudulent schemes,
including "buying, selling, stealing, or otherwise effecting an exchange of
SNAP benefits issued and accessed via [EBT] cards ... for cash or
consideration other than eligible food, either directly, indirectly, in complicity
or collusion with others, or acting alone." 7 C.F.R. § 271.2.

<u>FACTUAL BACKGROUND</u>

The USDA operates SNAP under the Food Stamp Act, 7 U.S.C. §§ 2011, *et seq.* SNAP is administered by the USDA's Food and Nutrition Services ("FNS"), with a mission to "promote the general welfare and safeguard the health and well-being of the Nation's population by raising the levels of nutrition among low-income households." 7 U.S.C. § 2011. Electronic benefit transfer ("EBT") cards are distributed to households qualified to participate in SNAP. The EBT cards function like a debit card. The household's account is credited monthly with the amount of benefits allocated and members of the household access the benefits by swiping the card at a specially programmed point-of-sale device issued to stores authorized to participate in SNAP. The benefits are debited from the household's account and credited to the store's designated bank account. Benefits may only be used to purchase eligible items.

FNS employs the Anti-Fraud Locator using EBT Retailer Transactions ("ALERT") system to monitor SNAP transactions and flag those with unusual patterns that may be consistent with trafficking. The ALERT system records EBT transactions at every retail store participating in SNAP. One manner of trafficking occurs when SNAP recipients sell their

benefits for cash to food retailers, usually at a discount.  FNS looks for patterns indicative of trafficking, like multiple transactions by the same household in a short period, to avoid a single high dollar transaction, or unusually high dollar transactions at stores that otherwise have small transactions.  If FNS identifies a retailer with unusual patterns it will conduct further investigation.

West Town Market, located in Wayne, Michigan, is a 2,000 square foot store that is described as a grocery store by plaintiff and as a convenience store by defendants.  (Beshi Aff. ¶ 4; Denise Thomas Decl. ¶14).  In 1995, West Town Market was authorized to participate in SNAP. Significantly, plaintiff had no compliance issues in he 22 years preceeding this action.

West Town Market showed up on the ALERT system and FSN researched its EBT data from February 1, 2017 through May 31, 2017. The average SNAP transaction at a convenience store in all of Wayne County during the relevant four month period was $5.67, while West Town Market's average ranged from $10.88 a month to $15.06 a month.  West Town Market had total SNAP sales of $25,906.10, which was nearly double

the average SNAP sales ($13,936.64) for convenience stores in Wayne County during the same period.

An FNS contractor, Kelli Chambliss, visited West Town Market to conduct an on-site review.  She noted the market did not have scanners at the checkout, did not have shopping baskets or carts, and that it operated through a plastic barrier.  Chambliss's report contained several errors, such as the size of the store (she said the store was 1500 square feet, but it is 2000 square feet), the size of the counter (she said it is 1 x 1, but it is 3 x 3), whether it has baskets for shopping (she said it does not, but it does) and how many entrances it has (she said it had only one entrance, but it has two).

At the time relevant to the facts of this case, Beshi had only one employee, Stiven Toma, who worked as a cashier.  (Beshi Dep. p. 9). Chambliss spoke to Toma who said that the most expensive SNAP eligible item sold at West Town Market was a 12.5 oz. can of baby formula that sold for $20.99.  The next most expensive items ranged from $5.69 to $6.99.

FNS Specialist Anthony Pesini reviewed the ALERT data and results of the on-site review.  Pesini found 29 sets of violations in which a

household conducted multiple higher-than-average SNAP transactions in fewer than 24 hours.  (EFC No. 11, AR 92).  One such household spent $20.96, $35.21, $26.50 and $32.92 in a 24 hour period, with two of the transactions occurring in less than one hour.  *Id.*  Pesini also identified 219 SNAP transactions exceeding $24, and 23 SNAP transactions exceeding $100.  *Id.* at 93.  A comparison of larger convenience stores located less than 2 miles away with similar inventory showed no transactions unusually close in time from the same household during the same period, 87 SNAP transactions over $24, and 5 transactions over $100.  *Id.* at 94.

Next Pesini analyzed data for three of the specific households involved in the suspicious transactions and found that within days of the households making an unusually large SNAP transaction at West Town Market, they also made a SNAP purchase at a superstore.  *Id.* at 100-107. One household spent $1,797.63 in SNAP benefits at a superstore and during the same period spent $3,026.76 at West Town Market.  *Id.* at 107. Pesini noted that this was indicative of trafficking because there were not many products a household could purchase at West Town that they could not get at better-stocked and lower-priced superstores.

West Town Market did not carry fresh meat, specialty or ethnic foods that would provide a reason for it to have uniquely high transactions compared to its lower-priced competitors. Pesini described West Town Market as a "place to pick up a few items forgotten at the grocery store or to get a few items to make dinner with." *Id.* at 93. Based on his analysis of the transaction data, he concluded there were "clear and repetitive patterns of unusual, irregular, and inexplicable SNAP activity" which warranted issuance of a trafficking charge letter. *Id.* at 107.

FNS sent Beshi a charge letter on July 28, 2017. *Id.* at 128-30. The transactions FNS considered to be violations of SNAP regulations were attached to the charge letter. *Id.* at 131-38. The letter informed Beshi he could submit any information, explanation or evidence for FNS to consider in making a final determination.

Beshi, through counsel, responded by submitting numerous receipts and invoices he believed showed that he purchased enough food inventory to support the amount of claimed SNAP sales. ECF No. 11-1, AR 184-280. Beshi explained that the large and multiple transactions occurred because there were no other grocery stores in the immediate neighborhood. *Id.* at 144; ECF No. 11-2, AR 333. He claimed that the data on large

transactions was not indicative of trafficking because he sold baby formula for $20.99 and $74.99 and cases of soda or energy drinks for $9.99 to $49.99. *Id*. at 147. Beshi emphasized that large purchases were due to the sale of baby formula not reimbursed by the Special Supplemental Nutrition Program for Women, Infants and Children (WIC"), as well as the sale of soda and energy drinks. *Id*. at 334.

Pesini reviewed the documentation submitted by Beshi and determined that 78% of West Town Market's SNAP-eligible inventory consisted of soda, snacks and candy and noted that it seemed unlikely a household would spend a large proportion of their monthly benefits on these items. ECF No. 11-3, AR 462. Pesini determined that within one mile of West Town Market there were 12 other convenience stores, a supermarket, a meat market, a medium grocery store and a farmer's market. *Id*. at 462-63.

West Town's WIC redemptions for March – May were $15,722.62. *Id*. at 466. Beshi provided invoices for $5,339.70 of baby formula inventory purchased during the period at issue. Even considering a 100% markup on formula, Pesini concluded there would be a large excess in WIC redemptions, making it reasonably likely that most formula sales were

made with WIC rather than SNAP benefits. Pesini also determined it was highly unlikely a household would spend over $100 on cases of energy drinks and soda in a convenience store when the same could be obtained more cheaply at a superstore. *Id.*

One of the households had 18 SNAP transactions totaling $1,459.63 at West Town in a 6-day timeframe in March and had no other transactions at West Town before or after that date. *Id.* at 466-67. The particular household shopped at Kroger and other markets during the same period, causing FNS to conclude it was unlikely the household would legitimately spend such a large amount on food at a convenience store.

Based on Pesini's analysis and Beshi's evidence, Pesini's supervisor, Denise Thomas, found by a preponderance of the evidence that the transactions identified in the charge letter were more likely than not the result of trafficking. *Id.* at 468-69. FNS informed Beshi that West Town Market would be permanently disqualified from the SNAP program. Beshi requested administrative review of the decision. *Id.* at 474. On June 28, 2018, FNS issued a final agency decision upholding the finding of trafficking and West Town Market's permanent disqualification. *Id.* at 530-31.

In undertaking its administrative review, the Administrative Review Officer considered FNS's analysis of the invoices submitted by Beshi which showed that during the period at issue, West Town Market purchased eligible food totaling $36,964.96.  *Id.* at 545.  FNS assumed a 40% markup, estimating inventory of $51,750.94 in eligible foods.  *Id.*  For the period, West Town Market had $25,906.10 in SNAP redemptions and $21,362.54 in WIC redemptions, totaling $47,268.64.  *Id.*  FNS found it "highly unlikely" that West Town Market had only $4,500 in cash, credit card, debit card and personal check food sales over the four-month period.  *Id.*

The Administrative Review Officer noted that invoices proving sufficient food inventory purchases alone do not explain suspicious patterns of SNAP transactions.  "Even if there were sufficient food stock at West Town Market to mathematically support high dollar transactions, there does not appear to be anything that would reasonably attract SNAP households to shop there, a convenience store, in some cases travelling a few miles to do so, and spend substantial amounts of their SNAP benefits."  *Id.* at 546.  Together with the other findings – the market not being set up to support large dollar transactions and Beshi offering no explanation for the fact that households conducting large and multiple transactions shopped at

superstores during the same period – the Administrative Review Officer found it "more likely than not" that the irregular transaction patterns were the result of trafficking in SNAP benefits. *Id.* at 546-547. The Administrative Review Officer upheld West Town Market's permanent disqualification from SNAP. *Id.* at 547.

Plaintiff filed this action seeking judicial review of the final agency decision and asserting constitutional violations. The matter is before the court on cross-motions for summary judgment.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Tolan v.* Cotton, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National*

*Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

<u>JUDICIAL REVIEW OF ADMINISTRATIVE ACTION</u>

The standard of judicial review of a disqualification from SNAP "shall

be a trial *de novo* by the court in which the court shall determine the validity

of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15).

The trial *de novo* is limited to determining the validity of the administrative

action; the severity of the sanction is not open to review." *Goldstein v.*

*United States*, 9 F.3d 521, 523 (6th Cir. 1993). "A district court is to make

its own findings based upon the preponderance of the evidence and not

limit itself to matters considered in the administrative proceeding." *Warren*

*v. United States*, 932 F.2d 582, 586 (6th Cir. 1991).

The burden of proof is on the aggrieved store to establish the

invalidity of the administrative action by a preponderance of the evidence.

*Id*. "[A] store is responsible for illegal trafficking by employees even if there

is evidence that neither the owner nor manager of the store 'was aware of,

approved, benefited from, or was involved in the conduct or approval of the violation.'" *Bakal Bros. v. United States*, 105 F.3d 1085, 1088 (6th Cir. 1997).

## ANALYSIS

I.  Trafficking Violations

As a preliminary matter, plaintiff argues that rather than producing actual eyewitnesses or EBT Beneficiaries, defendant relies on computerized data and an on-site visit which is inadmissible hearsay. Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  The rule defines a statement as "a person's oral assertion, written assertion, or nonverbal conduct."  Fed. R. Evid. 801(a).  The EBT transaction data at issue in this case is taken from the point of sale and recorded in a national database.  The ALERT system records and tracks EBT transactions at every retail store participating in SNAP in the United States.  Data that is statistically unusual is included in an ALERT report.  Thomas Dec., ECF No. 20-2, ¶¶ 8-9.  Raw data produced by a machine is not a statement for purposes of hearsay. *Patterson v. City of Akron, Ohio*, 619 F. App'x  462, 480 (6th Cir. 2015).

Even if an ALERT report meets the definition of hearsay, defendant argues it falls into the hearsay exception for business records. FRE 803(6). To be admissible under Rule 803(6), a business record must meet the following requirements:

> 1) it must be made in the course of regularly conducted business activity; 2) it must be kept in the regular course of that business 3) the regular practice of that business must have been to make the memorandum; and 4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*See Farmbrough v. Wal-Mart Stores, Inc.,* 611 Fed. Appx 322, 326 (6th Cir. 2015) *citing Cobbins v. Tenn. Dep'T of Tranp.,* 566 F.3d 582, 588 (6th Cir. 2009).

FNS Section Chief Denise Thomas avers that transactional data is regularly recorded for all EBT sales and the data is regularly used to produce ALERT reports. Thomas Dec., ECF No. 20-2, ¶¶ 8-10. Plaintiff contends that the *report* generated from the ALERT data does not qualify as a business record because there is no foundation provided that the report was generated in the ordinary course of business. Nor is there a foundation that the report was made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

14

EBT transaction data from ALERT reports has routinely been relied upon by courts in this Circuit, as have reports of on-site visits.  *See Ganesh v. United States*, 658 F. App'x 217 (6th Cir. 2016) (court relied on electronic data and on-site visit); *McClains Market v. United States*, 214 F. App'x 502 (6th Cir. 2006) (court relied on EBT data and on-site visit); *W & H Food & Gas, Inc. v. United States*, No. 17-11096, 2018 WL 4961531 (E.D. Mich. Oct. 15, 2018) (Parker, L.); *J&L Liquor, Inc. v. United States*, No. 16-10717, 2017 WL 4310109 (E.D. Mich. September 28, 2017) (Davis, S.); *Hanna v. United States*, No. 04-74627, 2007 WL 1016988 (E.D. Mich. March 30, 2007) (Rosen, G.).

For purposes of this motion the court considers the data from the ALERT system and the on-site visit report to be admissible evidence. Plaintiff's objection to a lack of foundation is preserved and may be raised at trial.

FNS regulations expressly provide that a finding of trafficking may be made on facts established through on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system.  *See* 7 U.S.C. § 2021(a); and 7 C.F.R. § 278.6(a).  Courts have interpreted the regulation as permitting a

finding of trafficking based on EBT data. *See Hanna v. United States*, No. 04-74627, 2007 WL 1016988, *7 (E.D. Mich. March 30, 2007) (Rosen, G.).

In *McClains Market v. United States*, 214 F. App'x 502 (6th Cir. 2006), the Sixth Circuit upheld the district court's grant of summary judgment based on circumstantial evidence of trafficking supported by the same investigative procedures used in this case. The FNS Program Specialist reviewed EBT data and found multiple transactions by the same household in a short time and excessively large transactions for a convenience store. An on-site visit reinforced the conclusion that the store's layout did not support the large sales reflected in the EBT data. In the district court, the storeowner opposed summary judgment asserting that the higher than normal transactions were due to an increase in customer traffic from participation in WIC and the closing of competitors in the area. The owner averred that the store purchased enough inventory to support the amount of SNAP sales.

The *McClain* court held that the storeowner's affidavit did not explain any of the 149 unusual transactions identified by FNS, "any one of which is sufficient to establish a violation." The court held that offering general justifications for large expenditures is not enough to establish a genuine

issue of material fact as to the numerous alleged violations.  *Id*; *see also*
*Ganesh v. United States*, 658 F. App'x 217 (6th Cir. 2016) (explaining that
it is plaintiff's "burden to raise material issues of fact as to *each* alleged
violation").

FNS conducted a review of EBT transaction data, an on-site review of
West Town Market, a comparison of competitors, and an analysis of
individual household shopping data in determining that more likely than not,
the unusual transactions at West Town Market were trafficking.

A.  <u>Multiple Large Transactions</u>

In response to the alleged violations based on large transaction
amounts, plaintiff claims that customers have large transactions because
they buy cases of beverages or baby formula and that West Town Market
is the "only store in the neighborhood."  Beshi dep, pp. 20, 38, 40-41.  This
explanation alone is not sufficient because "general statements about
customers' shopping patterns or other customer practices are not enough
to create a triable issue of fact."  *J&L Liquor, Inc. v. United States*, No. 16-
10717, 2017 WL 4310109 (E.D. Mich. September 28, 2017).

Beshi provides invoices to show he purchased sufficient SNAP
eligible inventory to account for his SNAP transactions.  Beshi testified that

his grocery markup is 20%.  If he marked up his $36,964 in new inventory by 20% and sold it all, that would be $44,356 in food sales during the relevant period.  The SNAP and WIC redemptions totaled $47,268.  Where redemptions exceed inventory, it is "compelling evidence of food stamp trafficking."  *Hanna*, 2007 WL 1016988, at *6.  However, this does not take into account the fact that the store likely had inventory on hand in addition to the new inventory purchased during the relevant period.  There is insufficient evidence for the court to conclude that redemptions exceeded inventory without more information and analysis.

B.  Multiple Transactions in Short Timeframe by Same Household

Plaintiff concedes that at least one of the 29 sets of transactions by the same household occurred in a short time frame.  ECF No. 11-1, AR 145 ("As set forth below, the shortest time between transactions occurred on March 27, 2017 by household *7376 in Transaction 1 and 2.  Other than these two transactions, there is no evidence that the other cited transactions were in a short time frame or consistent with trafficking.")  Any single transaction identified by FNS "is sufficient to establish a violation."  *McClain's*, 214 F. App'x at 505.  However, plaintiff's concession does not go as far as argued by the government.  Plaintiff only concedes that the

transaction occurred in a short time frame, which itself is not an admission of trafficking.

Beshi is at a disadvantage to explain what items were purchased in the suspicious transactions identified by FNS.  This is because the government did not share any identifying information about the transactions that Beshi could investigate.  In fact, the government is not permitted to disclose names of EBT beneficiaries in a civil case.  See 7 C.F.R. 272.1(c).  At oral argument, the government attorney informed the court that the program is administered by the State.  The government argued it is plaintiff's burden to identify customers and suggested that plaintiff could obtain identifying information from the State.

C.    Motion to Amend Witness List

Plaintiff attempts to establish an issue of fact by providing affidavits from two West Town shoppers who receive EBT benefits, Tamara Fugate and Ronald Gever.  These individuals state that on many occasions they made multiple SNAP purchases on the same day from West Town Market using their EBT cards.  They also attest to making large purchases on their EBT cards from West Town Market.  ECF No. 19, Ex. C, Fugate Affidavit and Ex. D, Gever Affidavit.  On July 2, 2019, plaintiff filed a motion for leave

to amend their witness list to add Ms. Fugate and Mr. Gever, as well as a generic class of witnesses with EBT benefits who shop at West Town Market. ECF No. 25.

Defendant opposes plaintiff's motion to amend the witness list and argues that the affidavits should not be considered by the court. Neither Fugate nor Gever are mentioned in the administrative record, nor do they appear on plaintiff's witness list. When Beshi was asked at his deposition whether there was any other evidence to support that he was not trafficking, he did not disclose the witnesses.

When a party fails to disclose a witness, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In order to determine if a failure to disclose is substantially justified or harmless, the court considers: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the

evidence. *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (citation omitted).

Defendants were surprised by the disclosure in this case because there was no prior indication that customers would provide statements and the discovery period ended. Plaintiff explains that the omission of Fugate and Gever from the witness list was inadvertent on their part. They argue that it would be unfair to exclude the testimony of actual shoppers whose shopping habits are in direct contradiction to the data relied on by the government. Plaintiff asks that the witnesses to be added to the witness list and afford defendants an opportunity to conduct discovery.

The court grants plaintiff's motion for leave to amend witness list to add Fugate and Gever. The court denies plaintiff's request to add a generic class of shoppers with EBT benefits who purchase items at West Town Market, but will leave open the possibility if plaintiff is successful in identifying any customers who engaged in the specific transacgtions that form the basis of the disqualification. Discovery will be reopened to permit defendants to take the depositions of Fugate and Gever. During the period of discovery, plaintiff may seek to identify the individuals involved in the transactions attached to the charge letter.

E.    Conclusion

It is difficult for plaintiff to rebut the evidence presented by FNS when they are not provided with identifying information about customers' identities or specific items purchased.  Despite this difficulty, the plaintiff in this case raises an issue of fact with their inventory invoices and evidence that suggestsof a sloppy investigation.  The court will reopen discovery to allow defendant to depose plaintiff's two new witnesses as well as allowing plaintiff an opportunity to discover the identities of shoppers involved in the transactions at issue.  The court will amend the scheduling order accordingly.  Summary judgment is denied to both parties on Count I of plaintiff's complaint seeking review of final agency action.

CI.    Constitutional Violations

Plaintiff argues that permanent disqualification from SNAP is "an excessive punishment that violates the Eighth Amendment of the Constitution."  ECF No. 1, Compl. ¶ 24.  Plaintiff cites no support for this claim.

Plaintiff next argues defendants did not provide it with "access to their accusers and witnesses."  ECF No. 1, Compl. ¶ 25.  The Sixth Amendment applies to criminal prosecutions, not civil actions.  *Turner v. Rogers*, 564

U.S. 431, 441 (2011).  Plaintiff claims this administrative proceeding is "analogous to a criminal proceeding," but it fails to provide a plausible explanation in support.

Finally, plaintiff asserts a Fifth Amendment violation.  However, no fundamental right is implicated by the permanent disqualification of West Town Market, and disqualification has a rational basis to deter trafficking. *See Alhalemi, Inc. v. United States*, 224 F. Supp.3d 587, 594 (E.D. Mich. 2016).

Defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied as to plaintiff's constitutional claims asserted in Count II.

## CONCLUSION

For the reasons stated above, both parties' motions for summary judgment are DENIED as to Count I of the complaint for review of final agency action.  Defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED as to Count II of the complaint alleging constitutional violations.  Plaintiff's motion for leave to amend witness list to add two named shoppers with EBT Benefits who

purchased items at West Town Market is GRANTED. Discovery will be reopened as discussed above.

The scheduling order is amended as follows:

Discovery deadline is October 31, 2019

Final Pretrial Order due November 18, 2019

Final Pretrial Conference set for November 25, 2019 at 2:00 p.m.

Bench Trial set for December 3, 2019 at 9:00 a.m.

It is so ordered.


Dated: August 28, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 28, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk